[Crim. No. 7893.   Second Dist., Div. Four.   Nov. 28, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. RALPH ALVIN JOHNSON et al., Defendants and Appellants.

Ralph Alvin Johnson and Shirley Lee Meadows, in pro per., for Defendants and Appellants.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, Louis L. Selby and Norman H. Sokolow, Deputy Attorneys General, for Plaintiff and Respondent.

JEFFERSON, J.—In an information filed by the district attorney of Los Angeles County, defendant Ralph Alvin Johnson was charged with robbery in violation of Penal Code section 211 in three counts. In another information defendant Shirley Lee Meadows was charged with the same offense also in three counts. Each defendant pleaded not guilty. On motion of the People at the time of trial, the informations were consolidated. The jury returned verdicts of guilty as to each defendant on all three counts in the consolidated informations. The jury fixed the degree of the crime on each count to be robbery of the first degree. Probation was denied and each defendant was sentenced to state prison for the term prescribed by law on each count, sentences as to Count I and II ordered to run consecutively; sentences as to Count III ordered to run concurrently with Counts I and II.

Each defendant made application to this court for appointment of counsel to represent him on appeal. This court, having made an independent investigation of the record and having determined that it would be neither advantageous to the defendants nor helpful to the court to have counsel appointed, denied their applications; wherefore, each defendant prosecutes this appeal in propria persona.

Jean Whitlock testified that she was an employee at the Art Room, a tavern located in Long Beach, California. On December 16, 1960, a number of people were in the Art Room, and she was near the front of the bar talking when three men entered. One was defendant Johnson, the other, defendant Meadows and the third individual was later identified as being George Johnson. The men took up stations in the Art Room; George Johnson went behind the bar; defendant Mea-

dows went to the center of the bar; and defendant Johnson stood near the front door. George Johnson pointed a gun at her and told her to open the cash register. She replied that the cash register was open. He pulled out the drawer, took the currency from it, and demanded the rest of the money stating, "I know where it is, get it." She then took out the cash box and gave it to him. Between $150 and $170 was taken which was the property of the owner, Werner Zeller. Defendant Johnson fired a shot into the floor, stating "We mean business, hold it," and he told everyone to throw their wallets on the floor. One customer hesitated and defendant Johnson said, "We mean you, too." The two codefendants and George Johnson all had guns in their hands. The three men scooped up the wallets from the floor, put them in their pockets and went out the front door with the parting remark, "Don't move for ten minutes, or we'll shoot."

John D. Rohrabaugh testified he was a customer in the bar at the time of the robbery. At the command of defendants, he threw his wallet containing various credit cards, pictures and approximately $80 in cash to the floor. He identified the two defendants as being the persons who committed the robbery.

Robert Ewart testified he was a customer in the bar at the time of the robbery. When defendants displayed guns and told him to throw his wallet on the floor, he threw his wallet which contained $37 on the floor. He identified the two defendants as being the persons who committed the robbery.

On March 1, 1961, defendant Meadows was arrested and taken by the officers to defendant Johnson's place of employment. When Johnson looked in their direction he fled. Later, defendant Johnson was arrested. Defendant Johnson testified in his own behalf and denied he committed the robberies in question. He stated he was at home with his wife at the time the robberies were committed. Defendant Johnson had changed his name and assumed the alias "Chapman." He had applied for and received a new driver's license and a new social security card using the alias. He admitted that he was acquainted with codefendant Meadows.

Shirley Meadows testified in his own behalf. He denied he committed the robberies and stated he was at his girl friend's house on the date the robberies were committed.

While the defendants filed separate briefs on appeal, they both contend the evidence was insufficient to support the verdicts. There is no merit to these contentions. ▮▮ The

evidence was substantial and where there is some substantial evidence in support of the jury's determination it must be upheld. *(People* v. *Caritativo,* 46 Cal.2d 68, 72 [292 P.2d 513].)

In the present case before us there was positive identification by several witnesses that defendants were two of three persons who committed the robberies. Defendants point out in their arguments that several of the witnesses were not sure of their identification and testified that the robbers were of the same general build and size of defendants. These were issues of fact for the determination of the jury and will not be disturbed here. "An appellate court may not reevaluate either the credibility of the witnesses or the weight that should be given to their testimony. [Citation.] The jury's decision on this factual issue is obviously controlling." *(People* v. *Brister,* 192 Cal.App.2d 234, 237 [13 Cal.Rptr. 375].)

"The strength or weakness of the identification, the incompatibility of and discrepancies in the testimony, if there were any, and the uncertainties of witnesses in giving their testimony were matters solely for the observation and consideration of the jurors in the first instance, and for the consideration of the trial court on motion for a new trial. It has approved the finding of the jury, and on appeal this court may not disturb such finding and the action of the trial court unless we can say, as a matter of law, that there was no evidence to support the conviction. [Citation.]" *(People* v. *Farrington,* 213 Cal. 459, 463 [2 P.2d 814].)

Each defendant called several witnesses in his behalf in an attempt to establish an alibi. It is apparent the jury did not believe these witnesses or the defendants' version of where they were at the time of the commission of the robberies. "The weight to be given to the testimony of the witnesses, whether in support of an alibi or otherwise, and their credibility, present questions for the determination of the jury which is binding upon this court on appeal. [Citation.]" *(People* v. *Weathers,* 97 Cal.App.2d 821, 823 [218 P.2d 545].)

Defendant Johnson contends the court in itself committed misconduct and prejudicial error by rushing the jury into reaching a verdict. During their deliberations the jurors returned to the courtroom at 4:05 o'clock and requested that some additional testimony be read to them. When this was completed the court made the following statement:

"THE COURT: . . .

"While you are here, I might tell you that the Court does not want to hurry you in your deliberations at all, and, as a matter of fact, so that you may not hurry, the Court should have by 3:00 or 3:30 at the latest informed Los Angeles if it was going to be necessary to obtain hotel reservations for you tonight. It's very late now. The Court should have done it before, but so that you will not be hurried, why, we have to notify Los Angeles because they have to send down extra deputies, and so forth, and we have to make reservations at a hotel and for dinner, and so forth. I would like to inquire now that you are here, who is the foreman?

"MR. PAGE: I am, your Honor.

"THE COURT: Mr. Page, has a ballot been taken as yet?

"MR. PAGE: Yes, sir.

"THE COURT: Do you anticipate with reasonable certainty that a verdict will be reached this evening if we do not make arrangements for—if you are unable to say, you can go into the jury room and discuss it.

"MR. PAGE: I prefer to do that.

"THE COURT: Very well, if you will do that and report right back to the Court just as promptly as you can, please because it will be necessary, as I say, to call Los Angeles. The Court should have done it before. The bailiff is going to get the Deuce for not having done it and the Court is going to have to assume the responsibility for not having done it. It's the Court's fault.

The jury retired to the jury room at 4:08 o'clock p.m. and returned to the courtroom at 7:50 o'clock p.m., advising the court they had reached verdicts in the case. We find there was no pressure placed on the jury and no error on the part of the judge.

■ Defendant Meadows contends the imposing of consecutive sentences violated the double jeopardy clause of the United States Constitution and of section 654 of the Penal Code of the State of California. This contention is without merit. Defendant relies on *Neal v. State of California*, 55 Cal.2d 11 [9 Cal.Rptr. 607, 357 P.2d 839], which is not in point. ■ "Whatever conflict may exist in the cases involving offenses against property, when we come to offenses against persons, there is more unanimity. Particularly is this true of robbery cases, the offenses here involved. The majority, and certainly the better rule, is that there is a separate offense committed against each person robbed. Obviously, a

robbery of several persons, where property is removed from each person, involves a separate act and a separate intent toward each victim. [Citations.]'' (*People* v. *Lagomarsino*, 97 Cal.App.2d 92, 100 [217 P.2d 124].)

In the case at bar there were three distinct robberies. Defendants robbed Jean Whitlock taking funds from the cash register and the cash box which contained property belonging to victim Werner Zeller. Defendants robbed both Robert Ewart and John D. Rohrabaugh of personal property and currency. ▆▆ In crimes against the person, there are as many offenses as persons affected. (*People* v. *Galvin*, 148 Cal.App.2d 285, 293 [306 P.2d 575] ; *People* v. *Kelly*, 168 Cal. App.2d 387, 390 [335 P.2d 955].)

Defendant Meadows contends that the trial court erred in instructing the jury, but he does not specifically set forth the nature of the error of which he complains. Since he is not represented by counsel on this appeal, on our own motion we have augmented the record to include the instructions given by the court. An examination thereof discloses that the trial court fully and fairly instructed the jury with respect to the applicable law.

▆▆ Defendant Meadows finally contends the prosecutor was guilty of prejudicial misconduct in his closing address to the jury. Defendant has not fulfilled his duty of pointing out to the court any errors on the part of the prosecutor upon which he bases his request for a reversal. He merely states in his brief that the prosecutor was guilty of prejudicial misconduct in his closing address to the jury. Such a statement is insufficient to warrant consideration. [▆▆ Error will not be presumed on appeal. *(People* v. *Farrara*, 46 Cal.2d 265, 268 [294 P.2d 21].)

Judgments of conviction are affirmed.

Burke, P. J., and Ford, J.,* concurred.

The petition of appellant Meadows for a rehearing was denied December 14, 1962.

---

*Assigned by Chairman of Judicial Council.