[Crim. No. 297. Fifth Dist. June 1, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. DAVID HAMILTON, Defendant and Appellant.

508

Ernest H. Tuttle, appointed by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Roger E. Venturi and Richard L. Hamilton, Deputy Attorneys General, for Plaintiff and Respondent.

CONLEY, P. J.—The defendant, David Hamilton, admits that he stole a valuable diamond ring from a jewelry store in the City of Tulare, but denies that he had the intention to commit theft when he entered the store, and, therefore, argues that he is not guilty of second degree burglary, the crime of which he was convicted. While, from the ethical standpoint, it is somewhat curious to hear an admission of what would constitute one major felony in the course of denying another, this defense, if established, is legally good. **[1]** For it is a necessary element of burglary to prove that at the very moment of entering the building in question there was an intent to commit theft or some felony; if that intention was absent, a conviction cannot stand. (Pen. Code, § 459; *People* v. *Lopez*, 249 Cal.App.2d 93, 98 [57 Cal.Rptr. 441]; 9 Cal.Jur.2d, Burglary, § 6, pp. 454-456.)

However, in the instant case, there was ample evidence to justify an inference on the part of the jury that at the very moment of entering the jewelry store the defendant had the intention to commit theft therein. Janie L. Barker was working as a clerk in Higdon's Jewelry Store in Tulare on April 18, 1966, when the defendant, accompanied by another man, entered the store and asked to see some "gent's rings." She asked him what type of ring, and he said that he would like to see some "gent's diamond wedding rings." Miss Barker exhibited on the counter some of the less expen-

sive rings in stock. Then, the defendant said he would like to see one of the more expensive rings in the window, and the clerk got one out of the show window and showed it to him. The defendant next asked to see one of the lady's diamond rings that was in the window, and when Miss Barker partly turned to take it out of its show place, her side was toward the defendant. She then saw him pick up the expensive man's ring, which she had previously exhibited, and put it in his right overcoat pocket; this ring was priced at $397.50 at retail. Miss Barker took the lady's ring from the window to show the defendant and in the process tripped the burglar alarm; she kept talking to him and delayed him somewhat, so that when he left the store without making any purchase he was immediately stopped outside by a Tulare policeman. The law enforcement officer had come to the shop after hearing the burglar alarm. He "frisked" the defendant and his companion and took them back into the store. Miss Barker stated at that time that the defendant had a man's diamond ring in his right coat pocket, and the officer reached his hand into the pocket and pulled the ring out.

The necessary intent to commit burglary in this case can be inferred from all of the facts and circumstances as shown by the evidence. (*People* v. *Lopez, supra,* 249 Cal.App.2d 93, 98; *People* v. *Taylor,* 220 Cal.App.2d 212, 216 [33 Cal. Rptr. 654]; *People* v. *Manfredo,* 210 Cal.App.2d 474, 478 [26 Cal.Rptr. 817]; *People* v. *Franklin,* 153 Cal.App.2d 795, 797-798 [314 P.2d 983]; 9 Cal.Jur.2d, Burglary, § 37, pp. 492-495.) An inference may properly be drawn from the testimony that defendant and his companion entered the jewelry store with the intent to steal a diamond ring by distracting the clerk's attention from the articles which the clerk was showing them. (See *People* v. *Clay,* 227 Cal.App.2d 87 [38 Cal.Rptr. 431, 100 A.L.R.2d 1421]; *People* v. *Stone,* 155 Cal. App.2d 259 [318 P.2d 25]; *People* v. *Owens,* 98 Cal.App.2d 485 [220 P.2d 575]; *People* v. *Jollet,* 60 Cal.App.2d 245 [140 P.2d 479].)

Appellant had testified that, as he was walking toward a doughnut shop to make a purchase, he met an old acquaintance, a Mr. Lenix, who asked appellant to accompany him to the jewelry shop to get a wedding band "out of hock." Defendant testified that in the store it was Lenix who asked to see all of the rings. But it was the testimony of Miss Barker that appellant alone asked to see each of the rings. It is apparent that the jurors did not believe the testimony of defend-

ant nor were they bound to accept it. (*People* v. *Pshemensky*, 244 Cal.App.2d 154, 156 [52 Cal.Rptr. 780].)

 It was not error on the part of the court to fail to give an instruction on grand theft; the appellant was not charged with that crime in the information and it is not a lesser included offense of burglary. (*In re Howe*, 135 Cal.App.2d 604, 605 [287 P.2d 510].) If the jury believed defendant's testimony, they could have acquitted him.

 Miss Barker, the jewelry store clerk, testified that immediately after she saw the appellant take the expensive diamond ring and place it in his pocket, she tripped the burglar alarm. Later, the district attorney used the term "burglar alarm" in asking her a question. The appellant contends that this terminology gave a prejudicial impression to the jury that the defendant had committed burglary. Defense counsel said, "I would respectfully request that the use of the word 'burglar' be omitted in referring to this alarm, if it is going to keep recurring during the course of this trial." The court then said, "Well, let the jury be admonished to consider that this is only an alarm and not a burglar alarm." Appellant did not move for a mistrial at the time, and it would seem that the court's admonition to the jury removed any necessity for the court to do more than advise the jury, as it in effect did, that the use of the term was not to be held against the defendant. "It must be assumed that ordinarily admonitions to the jury are heeded." (*People* v. *Gould*, 54 Cal.2d 621, 627-628 [7 Cal.Rptr. 273, 354 P.2d 865].) Furthermore, common sense would indicate that a spade may be called a spade in the presence of the jury, and that no juryman is going to vote to convict a defendant because the term "burglar alarm," a commonly accepted designation, was used.

 The appellant also calls attention to the fact that the sentencing judge, who did not hear the evidence, apparently believed that the defendant had pleaded guilty to the offense charged, and it is urged that if the court had realized that the defendant had been convicted by a jury, rather than through a plea of guilty, a lighter sentence or probation might have been ordered. The record shows that the judge erroneously stated that appellant had pleaded guilty to the charge of second degree burglary. The defendant had admitted two prior felony convictions and actually was not entitled to probation, even though a probation report was requested by the trial judge within the proper limits of his discretion. (Pen. Code, § 1203; *People* v. *Failla*, 64 Cal.2d 560, 569 [51 Cal.

Rptr. 103, 414 P.2d 39].) It should be noted in passing that counsel for defendant did not see fit to correct the judge's erroneous oral statement at the time it was made. It is impossible to believe that the sentencing judge would have rendered a different judgment with two admitted felony convictions against the defendant if he had kept in mind the fact that a jury had convicted him rather than that he had pleaded guilty. We cannot see how such an error could in any way justify a reversal.

Complaint is also made that the court did not follow the express language of the code section at the arraignment for judgment by inquiring, in so many words, whether he had "... any legal cause to show why judgment should not be pronounced against him." (Pen. Code, § 1200.)

Instead of using the language of the code section, the court said: "Do counsel have any comment to make concerning the judgment and sentence of the Court?" Counsel for the defendant replied: "No comment, Your Honor." And the district attorney stated: "We concur in the recommendation, Your Honor."

It may be assumed legitimately that if either of these experienced attorneys had any legal cause to show why the judgment of the court should not be pronounced, he would have stated it when the court asked whether the attorneys had any comment. We conclude that, in the circumstances, there was substantial compliance by the court with the requirements of Penal Code section 1200, and, consequently, that the error was harmless and does not require a reversal. (*In re Grayson*, 242 Cal.App.2d 110, 114 [51 Cal.Rptr. 145].) Appellant was adequately represented by counsel at the time of the sentencing, and as he did not then object to the language used by the trial judge, we cannot grant his counsel on appeal the privilege of urging the point now. (See *People* v. *Straw*, 209 Cal.App.2d 565, 567 [26 Cal.Rptr. 461]; *People* v. *Williams*, 155 Cal.App.2d 328, 332-333 [318 P.2d 106].)

Lastly, the defendant states on appeal that he desired to call, as a witness, his former companion Lenix, who, however, was not subpoenaed. While the defendant testified that Lenix took a somewhat more active role in the alleged burglary than the witnesses for the People indicated, the jury evidently was not impressed by the testimony of defendant in these respects, nor was it bound to accept the defendant's version. (*People* v. *Pshemensky, supra,* 244 Cal.App.2d 154, 156.)

Appellant contends that he had a constitutional right to have Lenix subpoenaed for an appearance at his trial, that he requested this witness be at the trial, because his testimony was vital, and that the failure of the sheriff's office to subpoena the witness was prejudicial to defendant and necessitates a reversal. The record shows that on May 10, 1966, appellant was arraigned on the original information and Public Defender Edward Kim was appointed. At Hamilton's request, the public defender was relieved of his responsibility, because defendant wished to prepare his own defense. Later, Mr. Henry of the public defender's office was appointed by the court to represent the defendant. On June 8, 1966, appellant, in the presence of his counsel, was arraigned on an amended information and the jury trial began on June 13. Appellant's counsel, during that period, did not contend that appellant had been denied his right to have the witness at the trial and did not move to continue the trial for the purpose of attempting to subpoena Lenix. There is no showing in the record as to whether a subpoena was properly presented to the court for issuance, or that there was a denial by the court of an attempt to subpoena Lenix, or that Lenix's whereabouts were known. (See *People* v. *Boyce*, 99 Cal.App.2d 439, 445 [221 P.2d 1011]; *People* v. *Sheridan*, 136 Cal.App. 675, 684 [29 P.2d 464].) Defendant cannot now complain.

The judgment is affirmed.

Stone, J., and Gargano, J., concurred.